Robert F. Croskery (0064802)
Attorney for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO, WESTERN DIVISION

| | |
|---|---|
| **CLAYTON PERKINS** | : Case No. 1:10-cv-00810-SJD |
| **Plaintiff** | : Judge Susan J. Dlott |
| V. | : MOTION TO FILE FIRST AMENDED COMPLAINT |
| **SUN CHEMICAL CORPORATION, et al** | : |
| **Defendants** | |

In lieu of answering Defendant's Motion to Dismiss, Plaintiff Clayton Perkins hereby moves to file his First Amended Complaint in accordance with Rule 15 of the Federal Rules of Civil Procedure. The Court should grant the Motion for the reasons stated in the attached Memorandum. The proposed First Amended Complaint is attached.

Respectfully submitted,

s/*Robert F. Croskery*
Robert F. Croskery (0064802)
Trial Attorney for Plaintiff
Croskery Law Offices
810 Sycamore St., 2nd Floor
Cincinnati, OH 45202
rcroskery@croskerylaw.com
Telephone:   (513) 232-5297
Facsimile:    (513) 338-1992

OF COUNSEL:

Croskery Law Offices

1

## MEMORANDUM

According to Rule 15(B) of the Federal Rules of Civil Procedure, "a party may amend its pleading" (after an answer) "only with the opposing party's written consent or the court's leave." The court should freely give leave when justice so requires. In the case before the Court, no discovery has taken place. The Motion to Dismiss filed by Defendants appears to be, in part, a Motion for a More Definite statement as to facts underlying the Complaint. Fleshing out the complaint a bit more, as here, and dismissing Defendant Scott Chase (as done in a separate pleading) helps judicial economy.

The Court should grant the Motion for Leave to Amend (and overrule the Motion to Dismiss as moot).

## CERTIFICATE OF SERVICE

I certify that the foregoing document was served on Robin Ryan, Esq., Graydon Head & Ritchey LLP, 7759 University Dr., Suite A, West Chester, Ohio 45069 through the Court's Electronic Filing System this 8th day of March 2011.

s/*Robert F. Croskery*
Robert F. Croskery (0064802)

Robert F. Croskery (0064802)
Attorney for Plaintiff

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO, WESTERN DIVISION

| | |
|---|---|
| **CLAYTON PERKINS** | : Case No. 1:10-cv-00810-SJD |
| Plaintiff | : Judge Susan J. Dlott |
| V. | : **FIRST AMENDED COMPLAINT** |
| | : |
| **SUN CHEMICAL CORPORATION, et al** | : |
| Defendants | |

## JURISDICTION

This Court has jurisdiction over this case because it is brought under Title 7 of the Civil Rights Act of 1964, 42 USC 2000(e) *et seq.* and thus presents a Federal question under 28 USC 1331. This Court also has jurisdiction over the pendant state law claims against the individuals involved, because they are part of the same case and controversy, and fall under the jurisdictional requirements of 28 USC 1367.

## PARTIES

1. Plaintiff Clayton Perkins ("PERKINS") lives at the address listed in the caption, is a lawful resident of Ohio and a male citizen of the United States.

2. Defendant Sun Chemical Corporation ("SUN") is a foreign corporation operating a facility located at the address listed in the caption, in Clermont County.

3. Defendant Robert Rainey ("RAINEY"), male, resides at the address listed in the caption, is a lawful resident of Ohio and a Citizen of the United States.

1

## FACTS

4. Plaintiff PERKINS began working for Sun Chemical Corporation ("SUN") in April, 2007.

5. Plaintiff transferred to the "Sun Jet" Division of SUN on January 5, 2009.

6. Upon his transfer, Plaintiff PERKINS experienced sexually graphic comments, sexually physical gestures, and severe and lewd comments from a male co-worker, Defendant RAINEY.

7. Plaintiff informed Defendant RAINEY the conduct was not acceptable and requested him to stop.

8. In spite of Plaintiff PERKINS persistent requests that this inappropriate behavior stop, Defendant RAINEY continued, causing Plaintiff PERKINS humiliation, emotional distress, embarrassment, and loss of the enjoyment of life.

9. After several days of this inappropriate conduct, Plaintiff PERKINS took the complaint to acting manager Kellie Adams (female) for resolution, along with a request to transfer back to his former department.

10. The HR Department Manager, Marty Saylers (female), approached Plaintiff PERKINS on the floor denying the request for transfer, and advising Plaintiff PERKINS to "work out" the conduct with Defendant RAINEY.

11. Plaintiff PERKINS requested to file a formal internal complaint, and Saylers expeditiously denied the request, with a simple directive to "work it Out" with RAINEY.

12. After several more months of sexually explicit, graphic, and lewd comments from Defendant RAINEY, directed toward Plaintiff PERKINS, and continually complaints to management, including Kellie Adams, and Scott Chase, the manager of the department, Plaintiff PERKINS still received no relief.

13. On February 26, 2009, Plaintiff PERKINS met with Mr. Geldenhuys, who informed Plaintiff PERKINS that he would be heading up a new water department and coming to the site late August, 2009. Throughout this time frame, Plaintiff PERKINS, up to this point, had received excellent performance reviews and was a respected and valued employee at the company, therefore, Mr. Geldenhuys comments that Plaintiff PERKINS should set as much time possible in laying out, setting up, and building the new department as time would allow was a welcome acceptance of his excellence and performance.

14. However, on March 10, 2009, Defendant RAINEY again made a sexual comment, this time about Plaintiff PERKINS's wife, specifically that Defendant RAINEY would "F—k Mr. , and F—k Mr. ' wife and make her like it."

15. Plaintiff PERKINS brought this incredibly inappropriate comment to the attention of the new manager of Sun Jet, a division of Sun Chemical Corporation, Scott Chase.

16. On March 11, 2009, Scott Chase, called Defendant RAINEY and Plaintiff PERKINS into a conference room for a meeting at 6:30am.

17. At the beginning of the meeting, Scott Chase, stated that he wanted all issues on the table for resolution. Plaintiff PERKINS began to outline his grievances, but Scott Chase immediately interrupted him stating that the conversation was not going to happen in this manner, squelching any attempt that Plaintiff PERKINS made to speak. Plaintiff PERKINS also requested for HR to be present, and Scott Chase denied this. Instead, without hearing Plaintiff PERKINS grievances, and without allowing any further commentary, Scott Chase declared "by this time next week, you two motherf---kers better be singing "Kum By Yah" arm in arm or you'll be out on Bach Buxton looking for work."

18. Because of the fact that Plaintiff PERKINS' grievance were not being heard, and he was being further abused, and because of Scott Chase's apparent unconcern regarding the commentary and the sexually explicit commentary of Defendant RAINEY, Plaintiff PERKINS began to leave.

19. Scott Chase, in a fit of anger, slammed his arm on the table several times screaming "Clayton sit down NOW" while reaching forward in a manner that made Plaintiff PERKINS fear for his physical safety.

20. Scott Chase continued to threaten Plaintiff PERKINS, and ordered him to sit down, at this point, Scott Chase excused Defendant RAINEY from the room and began abusing Plaintiff PERKINS with profanity, stating that if Plaintiff PERKINS ever again failed to follow orders, "you'll find yourself out of a job!"

21. This tirade continued for several minutes, finishing with the comment that "if you speak of this outside this room, you'll be looking for work".

22. Plaintiff PERKINS at this point understood that the company refused to take his complaints seriously, and at the same time that the company intended to tolerate Defendant RAINEY's improper conduct.

23. After a short period where Defendant RAINEY's abhorrent behavior lessened in severity, it again resumed.

24. At that point, Defendant RAINEY began to again make inappropriate comments, inappropriate gestures, including grabbing himself in his private parts and making vulgar commentaries such as "come suck your daddy's d-ck." At this point, Plaintiff PERKINS involved the Director of Sun Jet, Laurie Geldenhuys asking to speak with him on his next visit or have a telephone conversation.

25. However, in spite of this email request, at least two months went by before he was able to sit down.

26. Before the meeting with Mr. Geldenhuys, Scott Chase approached Plaintiff PERKINS and reminded him not to speak out about the March meeting, indicating that Plaintiff PERKINS should "consider the present economic job market".

27. On May 20, 2009, Plaintiff PERKINS outlined his grievances beginning from the day of this transfer to Sun Jet up to that time. During the meeting with Mr. Geldenhuys, Scott Chase came to the door, opened it, saw Plaintiff PERKINS there, and the meeting continued.

28. Mr. Geldenhuys indicated that he would "look into this" and be back in touch with Plaintiff PERKINS.

29. After the meeting was over, when Plaintiff PERKINS went to his automobile, he found a profane discriminatory paper on his car's windshield.

30. Mr. Geldenhuys did not contact Plaintiff PERKINS.

31. After some time had gone by and there had been no contact by Mr. Geldenhuys, Scott Chase began a campaign of retaliation and harassment. For example, Scott Chase discontinued providing daily job duties, as he had in the past, sending his instructions by way of other co-workers; he began to rebuke and scold Plaintiff PERKINS for pretextual job failures in the presence of others. Scott Chase refused to speak to Plaintiff PERKINS when he asked for directions, in the presence of others.

32. Plaintiff PERKINS presented a complaint against Scott Chase to Human Resources based upon his retaliatory conduct and Human Resources, without conducting an adequate and fair investigation, came back with a "No Merit Finding" for Scott Chase.

33. At this point, Plaintiff PERKINS contacted the EEOC and filed a charge of April 3, 2009, a true copy of which is attached as Exhibit A to the original complaint.

34. After filing the charge referenced in the preceding paragraph with the EEOC, the treatment of Plaintiff PERKINS again worsened. In June, 2009, Mr. Geldenhuys had commended Plaintiff PERKINS for progress on the new water department, stating "Good Job, Keep up the Good Work." Mr. Geldenhuys discovered the EEOC charge, and in August 2009, Mr. Geldenhuys stated "You've done yourself no favors my friend. I know where you filed and you've done yourself no favors."

35. Human Resources at the company continued to ignore a barrage of evidence that backs up Plaintiff PERKINS claim and Plaintiff PERKINS began to be verbally warned for pretextual items such as "being out of his work area on a regular basis", "excessive cell phone use" and "unsafe fork truck operation".

36. These complaints against Plaintiff PERKINS were frivolous, because other workers that were doing the same things did not receive such warnings, and Plaintiff PERKINS' conduct fell well within prudent and safe conduct for the company.

37. On October 1, 2009, Plaintiff PERKINS cut his thumb on the job, where he uses a razor knife dozens of times a day. Plaintiff PERKINS received medical care at the hospital. Scott Chase picked up Plaintiff PERKINS at the hospital and questioned him several times concerning the accident, with a series of seven interviews, four from Scott Chase, and several from a co-worker. Each interview becoming more rude and aggressive.

38. On October 14, 2009, after having stitches removed, a meeting was called for all Sun Jet employees to receive "Proper Razor Knife Training".

39. Afterwards, Plaintiff PERKINS was written up for "Violating Safety Training", safety training that he had just received earlier that day, which was almost two weeks after his injury. The write-up also included a write up for allegedly "Unsafe Fork Truck Operation" and a slip and fall that had occurred two years prior.

40. The above complaints were all frivolous and pretextual, and made for the purpose of punishing Plaintiff PERKINS for having complained to the EEOC, and for the purpose of "Papering the File" to deprive PERKINS of job benefits and fabricate a plausible reason to later discharge him.

41. On March 12, 2010, Plaintiff PERKINS received a "performance improvement plan" from the company, which was a mere pretext, as his performance had been excellent and outstanding, as it had been throughout his performance with the company.

42. This same plan was extended on May 28, 2010, with identical threats of discipline and termination should Plaintiff PERKINS "not turn around".

43. Plaintiff PERKINS continued to complain that his treatment was retaliation and harassment for having filed a charge with the EEOC.

44. On August 18, 2010, the EEOC ended its investigation and dismissed the case issuing a "right to sue" letter to Plaintiff PERKINS, a true copy of which is attached to the original complaint as Exhibit B.

45. In addition, the company took other adverse and inappropriate actions against Plaintiff PERKINS, including frivolous discipline for an event involving a Brian Fauber, who assaulted Plaintiff PERKINS unjustifiably, and other matters.

46. Moreover, the sexual harassment, graphic and inappropriate commentary continued, and continues to the time of the filing of this complaint. For example, throughout the fall of 2010,

7

39. Afterwards, Plaintiff PERKINS was written up for "Violating Safety Training", safety training that he had just received earlier that day, which was almost two weeks after his injury. The write-up also included a write up for allegedly "Unsafe Fork Truck Operation" and a slip and fall that had occurred two years prior.

40. The above complaints were all frivolous and pretextual, and made for the purpose of punishing Plaintiff PERKINS for having complained to the EEOC, and for the purpose of "Papering the File" to deprive PERKINS of job benefits and fabricate a plausible reason to later discharge him.

41. On March 12, 2010, Plaintiff PERKINS received a "performance improvement plan" from the company, which was a mere pretext, as his performance had been excellent and outstanding, as it had been throughout his performance with the company.

42. This same plan was extended on May 28, 2010, with identical threats of discipline and termination should Plaintiff PERKINS "not turn around".

43. Plaintiff PERKINS continued to complain that his treatment was retaliation and harassment for having filed a charge with the EEOC.

44. On August 18, 2010, the EEOC ended its investigation and dismissed the case issuing a "right to sue" letter to Plaintiff PERKINS, a true copy of which is attached to the original complaint as Exhibit B.

45. In addition, the company took other adverse and inappropriate actions against Plaintiff PERKINS, including frivolous discipline for an event involving a Brian Fauber, who assaulted Plaintiff PERKINS unjustifiably, and other matters.

46. Moreover, the sexual harassment, graphic and inappropriate commentary continued, and continues to the time of the filing of this complaint. For example, throughout the fall of 2010,

Defendant RAINEY continued to grab his private parts, while leering at the Plaintiff, and telling him to "suck my d—k".

47. In October of 2010, while engaged in a CPR class, Defendant RAINEY laughed at Plaintiff Perkins and told him "if I had to give you CPR, I would stick my d—k down your throat and you would choke. One way or another, you would be dead, motherf-cker."

48. On October 7, 2010, Defendant RAINEY came up from behind Plaintiff PERKINS and grabbed PERKINS buttocks, with his hand, while PERKINS was working, in management presence.

49. Although Plaintiff PERKINS complained again to management, and although Defendant RAINEY had committed previous, similar, outrageous acts, and made similar graphic and outrageous comments (ranging from threats of forcible anal sex to jeeringly threatening Plaintiff in other sexual ways), and although though episodes were known to management, Defendant RAINEY received but a mild reprimand.

50. Plaintiff PERKINS has been forced to seek professional counseling and treatment to deal with his extreme distress arising from the forgoing actions.

### FIRST CAUSE OF ACTION: VIOLATION OF TITLE 7 OF THE CIVIL RIGHTS ACT OF 1964 42 USC 2000 (et seq) (DEFENDANT SUN)

51. Plaintiff PERKINS realleges paragraphs 1-50 as if fully rewritten herein. The Defendant Sun Chemical Corporation has violated the Civil Rights of Plaintiff PERKINS, on the basis of his gender, by creating and/or facilitating a hostile environment and not making available to Plaintiff a workable mechanism to address his legitimate grievances.

52. As a result, Plaintiff PERKINS has suffered emotional distress, adverse actions against him, humiliation, upset, and is entitled to compensatory damages and his reasonable attorney fees.

## SECOND CAUSE OF ACTION: RETALIATION IN VIOLATION OF THE CIVIL RIGHTS ACT OF 1964 DEFENDANT SUN) 42 USC 2000

53. Plaintiff PERKINS realleges paragraphs 1-50 as if fully rewritten herein.

54. The Defendant Sun Chemical Corporation actions are tantamount to retaliation in violation of the Civil Rights Act of 1964, 42 USC 2000 *et seq.* and as explained in the attached charge and dismissal letter, Exhibits A and B attached to the original complaint, in that his supervisors have punished him, denied him wages, promition opportunities and benefits, and pretextually fabricated spurious discipline against him to punish him for his complaints of unlawful sexual harassment.

55. As a result, Plaintiff PERKINS has suffered emotional distress, a decline in his ability to make an income, loss of promotion opportunities, and other compensatory damages, and is entitled to his reasonable attorney fees and costs in this action.

## THIRD CAUSE OF ACTION: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (OHIO) (DEFENDANT RAINEY)

56. Plaintiff PERKINS realleges paragraphs 1-50 as if fully rewritten herein.

57. The conduct of Defendant RAINEY, as outlined above, is tantamount to intentional infliction of emotional distress under the common law of Ohio.

58. The conduct of the Defendant RAINEY was extreme and outrageous and caused Plaintiff PERKINS continuing and extreme emotional distress, such as no person should have to bear.

59. As a direct result of this conduct, Plaintiff PERKINS is entitled to compensatory damages in an amount to be determined.

60. As a direct result of the fact that the Defendant RAINEY engaged in this conduct with actual malice or in disregard to the substantial probability that his conduct would inflict great harm,

Plaintiff PERKINS is entitled to punitive damages to be awarded against the Defendants in an amount to be decided.

61. As a direct result, Plaintiff PERKINS is also entitled to his costs and reasonable attorney fees in this action.

### FOURTH CAUSE OF ACTION: VIOLATION OF SECTION 4112.02 OF THE OHIO REVISED CODE, ENFORCEABLE THROUGH 4112.99 OF THE OHIO REVISED CODE (SEXUAL HARASSMENT UNDER STATE LAW)

62. Plaintiff PERKINS realleges paragraphs 1-50 as if fully rewritten herein.

63. Defendant Sun Chemical Corporation's conduct is tantamount to a violation of Section 4112.02 of the Ohio Revised Code, enforceable through Section 4112.99 of the Ohio Revised Code, in that it is tantamount to Sexual Harassment.

64. Because the conduct was malicious, Plaintiff PERKINS is entitled to his reasonable cost and attorney fees from Defendant Sun Chemical Corporation, as well as his costs and attorney fees in this action and punitive damages in an amount sufficient to deter Defendant Sun Chemical Corporation from such actions in the future.

### FIFTH CAUSE OF ACTION: VIOLATION OF SECTION 4112.02 OF THE OHIO REVISED CODE, ENFORCEABLE THROUGH 4112.99 OF THE OHIO REVISED CODE (RETALIATION UNDER STATE LAW)

65. Plaintiff PERKINS realleges paragraphs 1-50 as if fully rewritten herein.

66. Defendant Sun Chemical Corporation's conduct is tantamount to a violation of Section 4112.02 of the Ohio Revised Code, enforceable through Section 4112.99 of the Ohio Revised Code, in that it is tantamount to retaliation for Reporting Sexual Harassment.

67. Because the conduct was malicious, Plaintiff PERKINS is entitled to his reasonable cost and attorney fees from Defendant Sun Chemical Corporation, as well as his costs and attorney fees in

this action and punitive damages in an amount sufficient to deter Defendant Sun Chemical Corporation from such actions in the future.

### SIXTH CAUSE OF ACTION: CIVIL BATTERY (OHIO) (DEFENDANT RAINEY)

68. Plaintiff PERKINS realleges paragraphs 1-50 as if fully rewritten herein.

69. The conduct of Defendant RAINEY was tantamont to wrongful or harmful touching.

70. As a proximate result of this assault, Plaintiff PERKINS experienced humiliation, embarrassment, loss of the enjoyment of life, and emotional distress, and is entitled to reasonable compensatory damages.

71. The actions of Defendant RAINEY was done with malice, and Plaintiff PERKINS is therefore entitled to an award of punitive damages in an amount sufficient to deter Defendant from such conduct in the future, as well as his reasonable costs and attorney fees.

### PRAYER FOR RELIEF

72. WHEREFORE, having fully pleaded his cause, Plaintiff PERKINS demands the following; on counts one through six, compensatory damages in an amount to be determined but believed to exceed $1,000,000.00, plus his reasonable costs and attorney fees in this action, and any and all such other relief as a jury may direct.

Respectfully submitted,

s/*Robert F. Croskery*
Robert F. Croskery (0064802)
Trial Attorney for Plaintiff
Croskery Law Offices
810 Sycamore St., 2nd Floor
Cincinnati, OH 45202
rcroskery@croskerylaw.com
Telephone:   (513) 232-5297
Facsimile:   (513) 338-1992

OF COUNSEL:

Croskery Law Offices

11

CERTIFICATE OF SERVICE

I certify that the foregoing document was served on Robin Ryan, Esq., Graydon Head & Ritchey LLP, 7759 University Dr., Suite A, West Chester, Ohio 45069 through the Court's Electronic Filing System this 8th day of March 2011.

s/*Robert F. Croskery*
Robert F. Croskery (0064802)